**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALI ELGHANNAM,<br><br>            Plaintiff,<br><br>            v.<br><br>NATIONAL ASSOCIATION OF BOARDS OF PHARMACY,<br><br>            Defendant. | Case No. 15-cv-01554 (CRC) |

**MEMORANDUM OPINION**

Ali Elghannam, an Egyptian immigrant and native Arabic speaker, filed a *pro se* complaint against the National Association of Boards of Pharmacy ("NABP") for denying his application for a certificate to practice pharmacy in the United States. NABP withheld the certificate after the Educational Testing Service ("ETS"), which is not affiliated with NABP, cancelled Elghannam's score on the Test of English as a Foreign Language ("TOEFL"). A passing TOEFL score is a licensing requirement for foreign-pharmacy-school graduates like Elghannam. The Court dismissed Elghannam's initial complaint because it alleged wrongdoing only by ETS, but permitted him to amend the complaint to supplement his allegations against NABP. After two amendments, Elghannam still has not stated a plausible claim against NABP. The Court will therefore dismiss Elghannam's second amended complaint with prejudice.

    **I.    Background**

        A.  Factual Background

The key facts underlying this case are not in serious dispute. As explained in the Court's prior opinion dismissing the initial complaint, see Elghannam v. Nat'l Ass'n of Bds. of Pharmacy, No. 15-CV-01554 (CRC), 2015 WL 8751097, at *1 (D.D.C. Dec. 14, 2015),

Elghannam sat for the TOEFL on April 10, 2015, and ETS—the non-profit organization that administers the exam—informed him 10 days later that he had passed. However, ETS subsequently notified Elghannam that it had cancelled his score due to purported inconsistencies between the voice on the speaking portion of Elghannam's April 10 test and that from previous tests he had taken. ETS also prohibited him from taking the TOEFL again for one year.[1] After learning of ETS's cancellation of the TOEFL score, NABP informed Elghannam that it could not issue him a pharmacist certificate.

### B. Procedural History

Elghannam brought a *pro se* complaint in the Superior Court of the District of Columbia seeking an order requiring NABP to issue him a certificate. NABP timely removed the case to this Court, Not. Removal, ECF No. 1, and then moved to dismiss the complaint for failure to state a claim. Mot. Dismiss, ECF No. 5. Elghannam's original complaint alleged no wrongdoing by NABP. See generally Compl.; see also Elghannam, 2015 WL 8751097, at *1. In his opposition to NABP's motion to dismiss, which raised this point, Elghannam sought to implicate NABP in ETS's purported wrongful conduct by alleging that it "agreed immediately" with ETS's decision to cancel his test score.[2] Pl.'s Opp'n Def.'s Mot. Dismiss, ECF No. 13, at 1; see also Elghannam, 2015 WL 8751097, at *1.

---

[1] As ETS explains in its TOEFL registration bulletin, test scores may be cancelled and test takers barred from taking future tests due to identification discrepancies or suspected fraud. See Second Am. Compl. Ex. C, ECF No. 24.

[2] While courts have held that even a *pro se* plaintiff "is not entitled to raise new claims for the first time in an opposition to a motion to dismiss," Morris v. Carter Glob. Lee, Inc., 997 F. Supp. 2d 27, 42 (D.D.C. 2013), the D.C. Circuit recently held that a district court must consider together all allegations that *pro se* plaintiffs make in their pleadings—including oppositions—when resolving a motion to dismiss, see Brown v. Whole Foods Mkt. Grp., 789 F.3d 146, 151 (D.C. Cir. 2015). The Court therefore considered allegations that appeared in Elghannam's opposition to NABP's motion to dismiss in addition to those in his complaint.

On December 14, 2015, the Court granted NABP's motion because it found Elghannam's pleadings to be "completely 'devoid of . . . factual enhancement' regarding potential misconduct by NABP." Elghannam, 2015 WL 8751097, at *1 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court then allowed Elghannam the opportunity to file an amended complaint in conformance with the pleading standard set forth in Iqbal and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Id. at *2. Following this order, Elghannam timely filed a first amended complaint on December 22, 2015. First Am. Compl., ECF No. 18. NABP again moved to dismiss, observing that the new complaint was similarly devoid of facts or plausible allegations of wrongdoing. See Def.'s Mot. Dismiss First Am. Compl., ECF No. 20. Elghannam responded to the motion, reasserting the allegations included in the first amended complaint and also claiming that the letter he received from ETS cancelling his score was "forged." Pl.'s Opp'n Def.'s Mot. Dismiss First Am. Compl., ECF No. 21, at 8–9.

Following a status conference in early February, the Court *sua sponte* granted Elghannam the opportunity to supplement his opposition to NABP's motion to dismiss his first amended complaint. Instead of supplementing his opposition, however, Elghannam filed a second amended complaint. In this latest version of his complaint, Elghannam again incorporates the additional allegation raised in the first amended complaint (that NABP *conspired* with ETS to cancel his TOEFL test score), but removed the forgery claim and added the allegation that NABP took this action against him specifically because he is Muslim. See Second Am. Compl. 1, ECF No. 24. Presently before the Court is NABP's motion to dismiss the second amended complaint,

Elghannam's opposition, NABP's reply, and Elghannam's motion for leave to file a surreply in support of his opposition to that motion.[3]

## II. Standard of Review

To overcome a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Facial plausibility entails "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the court "must take all of the factual allegations in the complaint as true," legal conclusions "couched as a factual allegation" do not warrant the same deference. Id. (citing Twombly, 550 U.S. at 555).

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal citation and quotation marks omitted). A court generally cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion, but it may consider "documents attached as exhibits or incorporated by reference in the complaint." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citing Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009)) (internal citation omitted). Further, a *pro*

---

[3] The Court denies Elghannam's motion for leave to file a surreply, in which he attempts to rebut the argument in NABP's reply that he has not alleged facts showing that NABP knew of his Muslim faith. NABP originally raised this argument when it moved to dismiss Elghannam's second amended complaint—an argument to which Elghannam could have responded in his opposition to that motion. Because a surreply is appropriate "only to address new matters raised in a reply, *to which a party would otherwise be unable to respond*," U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 276 (D.D.C. 2002) (emphasis added), the Court will not consider Elghannam's proposed surreply. See also Minute Order, May 4, 2016 (denying leave to file).

*se* plaintiff's pleadings must be "considered *in toto*" to determine whether they "set out allegations sufficient to survive dismissal." Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 151 (D.C. Cir. 2015).

"The standard for dismissing a complaint with prejudice is high," Belizan v. Herson, 434 F.3d 579, 583 (D.C. Cir. 2006), and courts must "freely give leave when justice so requires," Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). However, dismissal with prejudice may be appropriate "when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 131 (D.C. Cir. 2012) (quoting Firestone, 76 F.3d at 1209). That is particularly true when the plaintiff has had repeated opportunities to amend his complaint. See, e.g., Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003)) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'").

### III. Analysis

Elghannam's second amended complaint presents several claims: that NABP conspired with ETS to breach a contract between ETS and Elghannam; that NABP engaged in a civil conspiracy with ETS; and that NABP took adverse actions against Elghannam because he is Muslim.[4] Because his complaint fails to meet "the threshold requirement of [Federal] Rule [of Civil Procedure] 8(a)(2) that" it contain allegations that "possess enough heft to show that [he]

---

[4] Elghannam also contends, in a separate count, that his contract with ETS constituted an "unconscionable contract." Second Am. Compl. ¶¶ 23–25. However, because unconscionability is a defense to enforcement and not a cause of action, see, e.g., Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 450 (D.C. Cir. 1965), this Court will dismiss that count of Elghannam's second amended complaint.

5

is entitled to relief" against NABP, Twombly, 550 U.S. at 557 (internal quotation marks omitted), it fails to state a claim upon which relief can be granted and therefore warrants dismissal under Federal Rule of Civil Procedure 12(b)(6). Additionally, as Elghannam has failed after multiple attempts to plead sufficient facts to survive a motion to dismiss, the Court will dismiss the second amended complaint in its entirety with prejudice for the reasons stated below.

### A. Conspiracy in ETS's Alleged Breach of Contract

Elghannam alleges that NABP conspired in ETS's purported breach of its contract with him to administer and score the TOEFL. The Court construes this claim as essentially one of tortious interference with contract by NABP. In the District of Columbia, a plaintiff must prove all of the following to prevail on a claim of tortious interference with contract: "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." Cooke v. Griffiths-Garcia Corp., 612 A.2d 1251, 1256 (D.C. 1992) (internal citation omitted). According to Elghannam, NABP is responsible for two specific breaches of contract by ETS: ETS's reporting of Elghannam's cancelled scores and ETS's cancellation of those scores in the first place.

As to the first purported breach, the ETS registration bulletin provides that if a test taker's scores are cancelled, "those scores will not be reported." Second Am. Compl. ¶ 20. Elghannam contends that ETS breached this provision by reporting his passing scores *prior* to cancelling them. Id. Elghannam also claims that the month-long period between the initial reporting to NABP and the subsequent cancellation of the test scores is evidence that NABP "requested" the cancellation, implicating it in the breach of contract. Id.

6

These allegations fail to support a claim of tortious interference with contract. First, even if Elghannam is correct that ETS breached a contract with him by reporting his scores,[5] he asserts no facts that implicate NABP in causing the alleged breach of the contract's reporting provision. Elghannam attempts to connect NABP to the breach by claiming that NABP "requested" ETS to "cancel" the scores. Second Am. Compl. ¶ 20. Yet this fact, even taken as true, does not allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, because Elghannam premises this particular aspect of his claim on ETS's *reporting* (not its cancellation) of his score. Elghannam offers no factual allegations that NABP had a hand in the reporting process, and—at a minimum—has failed to "show[] that [he] is entitled to relief" against NABP on this basis. Fed. R. Civ. P. 8(a)(2).

Regarding Elghannam's apparent claim that the *cancellation* of his scores also constituted a breach of contract by ETS, see Second Am. Compl. ¶ 21(b), Elghannam speculates that NABP asked ETS to take this action. Yet even assuming the other elements of a tortious interference claim are met, Elghannam alleges no facts to suggest that NABP intentionally procured the contract's breach or that it ever asked ETS to cancel Elghannam's scores. He claims that because the registration bulletin states that ETS would "notif[y] the test taker in writing about its concerns" before cancelling scores, ETS breached its contract with him by not providing him with any prior notice or process. Second Am. Compl. ¶ 21. But again, the only fact Elghannam offers to hold *NABP* liable is the approximately month-long delay between the

---

[5] NABP correctly notes that the Superior Court of the District of Columbia recently dismissed Elghannam's separate breach-of-contract claims against ETS. Mot. Dismiss Second Am. Compl. 1. Elghannam argues, without explanation, that NABP's citation in its motion to the Superior Court's opinion is further proof of the conspiracy between the NABP and ETS. See Pl.'s Opp'n Mot. Dismiss Second Am. Compl. ¶ 1.

7

initial reporting of the scores and the later cancellation, which he argues is "circumstantial evidence that NABP requested [the cancellation] from ETS." Id. Without more, Elghannam's assertion that NABP intentionally caused ETS to breach its contract with him is "a conclusory allegation" with no supporting facts. Twombly, 550 U.S. at 557.

### B. Civil Conspiracy

Elghannam's next claim is civil conspiracy. To make out a conspiracy claim, Elghannam must establish "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of parties to the agreement, and in furtherance of the common scheme." Hill v. Medlantic Health Care Grp., 933 A.2d 314, 334 (D.C. 2007). Civil conspiracy is not an independent tort in the District of Columbia. Id. Rather, it is only a "means for establishing vicarious liability for an underlying tort." Id. (quoting Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000)).

As an initial matter, Elghannam does not even attempt to specify what unlawful act he alleges NABP and ETS conspired to commit. To the extent he alleges that they agreed to breach ETS's contract with him, this count is duplicative of his tortious interference with contract claim. Moreover, Elghannam fails to allege facts to support a plausible inference of an agreement between NABP and ETS. Elghannam claims that NABP and ETS were involved in a "civil conspiracy" to discriminate against him based on his Muslim faith. Second Am. Compl. ¶ 16. And he alleges that NABP "request[ed]" and "convinced" ETS to cancel his scores to prevent him from receiving his pharmacist certificate, id. ¶ 4, as part of a conspiracy with ETS to "discriminate against Muslims," id. ¶ 3. He further claims that NABP withheld his certificate for "more than one month," until ETS sent the TOEFL score cancellation letter, Second Am. Compl. ¶ 14, thus showing a "relationship" between NABP and ETS, id. ¶ 16.

8

But, as in his prior complaints and other pleadings, Elghannam again fails to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." Twombly, 550 U.S. at 556. Elghannam's assertions that NABP made a "request" or "convinced" ETS to issue the cancellation are no more than "naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). His "bare assertion[s], much like the pleading of [antitrust] conspiracy in Twombly, . . . [are] conclusory and not entitled to be assumed true." Id. at 681. Elghannam's additional contention that NABP purposefully withheld the certificate until ETS cancelled the scores also does not plausibly allow for the inference that it was more than "independent action," Twombly, 550 U.S. at 557, and therefore does not "raise these allegations above the speculative level," id. at 555.

C. Discrimination

Finally, Elghannam generally contends that NABP and ETS "planned to discriminate against Muslims and to prevent them [from] tak[ing] any pharmacist certificate" in the United States. Second Am. Compl. ¶ 27. Yet the only "facts" Elghannam marshals in support of his discrimination claim are news articles and studies of anti-Muslim discrimination in the United States, none of which are in any way connected to NABP. Id. ¶¶ 28–31. Elghannam's assertion of unlawful discrimination thus amounts to nothing more than a "legal conclusion[]" without supporting factual allegations, Twombly, 550 U.S. at 564, and as such is "not entitled to the

assumption of truth," Iqbal, 556 U.S. at 680.  The Court must therefore dismiss this claim as well.

## IV. Conclusion

In sum, Elghannam has repeatedly failed to cure the deficiencies in his pleadings, despite being afforded numerous opportunities to amend and supplement his prior filings.  Any additional attempts to plead facts in support of his claims would be futile.  Accordingly, the Court will grant NABP's motion to dismiss the second amended complaint with prejudice.  An order accompanies this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:   July 15, 2016